*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0331P (6th Cir.)
File Name: 00a0331p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MARY ELIZABETH LEARY;
GLENDA H. WILLIAMS,
    *Plaintiffs-Appellants/*
      *Cross-Appellees,*

    *v.*

STEPHEN W. DAESCHNER,
Superintendent of the
Jefferson County Board of
Education,
    *Defendant-Appellee/*
      *Cross-Appellant.*

Nos. 99-6266/6267

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00465—Charles R. Simpson III,
Chief District Judge.

Argued: August 1, 2000

Decided and Filed: September 20, 2000

Before:  MOORE and CLAY, Circuit Judges; HOOD,[*] District Judge.

—————————

**COUNSEL**

**ARGUED:**  Daniel T. Taylor III, Louisville, Kentucky, for Appellants.   Michael K. Kirk, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellee.  **ON BRIEF:** Daniel T. Taylor III, Louisville, Kentucky, for Appellants. Michael K. Kirk, Denise L. St. Clair, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellee.

—————————

**OPINION**

—————————

KAREN NELSON MOORE, Circuit Judge.  Plaintiffs-appellants and cross-appellees Mary Elizabeth Leary and Glenda H. Williams ("plaintiffs") were teachers at the Atkinson Elementary School ("Atkinson"), a public school in Jefferson County, Kentucky.  At the end of the 1998-99 school year, they were involuntarily transferred to another school within the school district.  Alleging that they were transferred in retaliation for exercising their First Amendment rights and that they were not afforded due process in connection with the transfer, the plaintiffs brought the instant suit under 42 U.S.C. § 1983 against defendant-appellee and cross-appellant Stephen W. Daeschner, the Superintendent of the Jefferson County Board of Education, seeking a preliminary injunction preventing the school district from completing the transfer.  The district court denied the plaintiffs' motion for preliminary injunction based on their First Amendment claim but enjoined Daeschner from transferring the plaintiffs until they had received due process.

—————————

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

the hearing. This argument is one of semantics. It is clear from the context of the letter that the termination would be effective that day, barring a successful challenge to the reasons given for the transfer. In addition, to the extent that the plaintiffs make claims regarding the alleged bad faith or bias of the school administrators in connection with the hearing — such as purported statements by the new principal of Atkinson that he did not want the plaintiffs to return to the school and had no intention of reinstating them — we note that predeprivation hearings are intended only to be an "initial check" on the employer's decision, and "need not definitively resolve the propriety of" the action. *Loudermill*, 470 U.S. at 545. In contrast to the predeprivation hearing, one purpose of more elaborate postdeprivation process is "to ferret out bias, pretext, deception and corruption by the employer." *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1081 (1989). Therefore, the plaintiffs have received all the predeprivation process that they are due, and the district court correctly lifted the preliminary injunction.

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED** in its entirety.

Three days later, the district court dissolved the injunction, finding that the school had provided sufficient process to the plaintiffs in the time since the court's original order. The plaintiffs then brought this appeal, claiming that the district court abused its discretion in denying a preliminary injunction on their First Amendment claims and in finding that the plaintiffs had been afforded due process. Daeschner cross-appealed, claiming that the district court's original determination that the plaintiffs were entitled to due process was in error. For the reasons discussed below, we **AFFIRM** all of the district court's rulings.

### I.  BACKGROUND

Mary Elizabeth Leary and Glenda H. Williams were long-time special education teachers at the Atkinson Elementary School, a public school in Jefferson County, Kentucky.[1] Atkinson, the undisputed evidence shows, is a highly troubled elementary school, producing some of the lowest student test scores in the state of Kentucky. In fact, Atkinson was identified by the state as a school "in decline." Moreover, the school has a reputation for being an unpleasant place to work: testimony presented to the district court suggested that Atkinson has had great difficulty in getting qualified individuals to accept and keep the job of principal, due in part to the tense relationship between Atkinson faculty and administration. In addition, several teachers testified that student discipline was a significant problem.

Due to Atkinson's poor academic achievement level, the school qualified under the Kentucky Education Reform Act to receive the assistance of a Distinguished Educator, or "Highly Skilled Educator," an employee of the school district who specializes in aiding troubled schools. Atkinson's Distinguished Educator was Nancy Bowlds, who arrived at the school in August 1998. Bowlds conducted a number of

---

[1] A third plaintiff, Donna J. Grant, was originally involved in the case but dropped out of the litigation after deciding to accept a voluntary transfer to another school in August 1999.

meetings, communicated with teachers and administrators, and worked closely with the then-principal of Atkinson, LeDita Howard, in order to devise an improvement plan for the school. Ultimately, it was decided that a "collaborative model" of education was the preferable one, and Howard formally presented the idea to the Atkinson faculty, where it met with some resistance. Shortly thereafter, in approximately May of 1999, the decision was made to transfer some of the teachers from Atkinson to another school, purportedly in order to ensure that the faculty would primarily consist of teachers who were in favor of implementing the proposed changes, and partly also in hopes of changing the overall climate at the school through a change of personnel. The unrefuted testimony of the defendant's witnesses indicates that the idea of transferring personnel was initiated by district-level administrators William Eckels, the Executive Director of Human Resources, and Dr. Freda Meriweather, the Assistant Superintendent for District-Wide Instruction, with the approval of Superintendent Stephen Daeschner.

Once the decision was taken to transfer some teachers, Meriweather asked Howard and Bowlds to suggest the names of teachers who would be most likely to resist or impede the impending changes at Atkinson. Bowlds's list contained both Leary's and Williams's names, but Howard's did not contain either. Meriweather compared the lists and asked Howard whether she would agree with Bowlds's identification of Leary and Williams as prospects for transfer. Howard agreed. Neither Meriweather nor Eckels personally knew very much about the plaintiffs, but rather relied entirely on the advice of Howard and Bowlds. Ultimately, five teachers and one security monitor were given notice that they would be transferred out of the Atkinson school. Williams and Leary received letters on May 29, 1999, and June 1, 1999, respectively — the last days of the school year — informing them that they would be transferred pursuant to section D of the collective bargaining agreement (CBA) between the Jefferson County Board of Education and the Jefferson County Teachers' Association (JCTA). It is undisputed that

person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Loudermill*, 470 U.S. at 546. Although the school board gave the plaintiffs very little time to prepare for the August 16 hearing, the district court did not abuse its discretion in refusing to require further predeprivation process by extending its preliminary injunction. First, as Daeschner points out, the plaintiffs and their counsel had just finished gathering discovery and arguing about the reasons for the plaintiffs' transfer during the litigation of the preliminary injunction motion; they were thus undoubtedly prepared to respond to the reasons given for their transfer. Second, the plaintiffs' counsel appeared to indicate, at the preliminary injunction hearing, that they would be ready for a due process hearing as soon as August 16. *See* J.A. at 383-85 (Tr. of Hr'g 8/13/99). Third, there has been no allegation that the plaintiffs' counsel would have been unable to attend the hearing at the designated time; rather, counsel chose to spend the morning of August 16 preparing a contempt motion rather than attending the hearing. Fourth, it is undisputed that the plaintiffs can take advantage of a postdeprivation grievance procedure provided by the CBA, although the record contains very little information about this procedure. The plaintiffs have not alleged that this procedure is in any way unavailable to them. Finally, the entitlement to due process is an entitlement to "a meaningful hearing at a meaningful time." *Toney-El v. Franzen*, 777 F.2d 1224, 1228 (7th Cir. 1985), *cert. denied*, 476 U.S. 1178 (1986). All parties understood that there was some urgency associated with the pretransfer hearing, because the school year was scheduled to start on August 17. *See* J.A. at 384-85. In sum, the plaintiffs were afforded due process and waived their right to it by refusing to participate in the hearing offered to them by the school board. *See Collyer v. Darling*, 98 F.3d 211, 226-27 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997).

Moreover, the plaintiffs have not sufficiently shown that the hearing offered to them was not truly meaningful. The plaintiffs claim that the letter informing them of their right to a hearing also informed them that the transfer would be effective at 5:00 p.m. that day, regardless of the outcome of

associated with Section D transfers), 354 (Williams Test.) (same); *see generally Boger*, 950 F.2d at 321.

The plaintiffs' case does not fall within the exception laid out in *Ramsey v. Board of Education*, 844 F.2d 1268 (6th Cir. 1988). In *Ramsey*, this court noted that state postdeprivation procedures are sufficient, and neither a predeprivation hearing nor a federal cause of action is necessary, when the property interest at stake is a "specific benefit, term, or condition of employment," the loss of which is easily quantified, rather than the "tenured nature of the employment itself." *Ramsey*, 844 F.2d at 1274. The benefit lost in *Ramsey* was the right to compensation for a number of unused accumulated sick-leave days provided for by the plaintiff's employment contract. Since the plaintiff could sue under her employment contract, and the value of the property interest lost was clearly definable and quantifiable, this court held that a state-law breach of contract action would provide the plaintiff with sufficient due process. *See id.* at 1274. In the instant case, by contrast, the CBA has created for Williams and Leary a right to tenure in a particular position within the school district. We believe that the plaintiffs' loss of this tenure is more analogous to the complete termination from a post in *Loudermill* than the loss of a specific and primarily economic benefit in *Ramsey*. *Cf. Johnston-Taylor*, 907 F.2d at 1581-82 (holding that posttermination grievance procedures are not sufficient in the case of the discharge of tenured professors, where the professors were not given reasons for the discharge or an opportunity to be heard beforehand). The original determination by the district court that the plaintiffs were entitled to due process was not in error.

In the circumstances of this particular case, the predeprivation hearing ultimately provided by the school board was sufficient to satisfy the dictates of due process. Due process is a flexible principle whose requirements depend on the facts of the individual case. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in

the plaintiffs were given no prior notice of the decision and no reason for the transfer, except that it was "for good cause and extenuating circumstances" and "necessary for the efficient operation of the school district," which is the language of Section D.[2] Nor were the plaintiffs given an opportunity to be heard, except that they had the opportunity to grieve the decision through the process set out in the CBA.

Leary and Williams presented substantial evidence to the district court showing that they had been highly vocal on a number of occasions in criticizing various aspects of the management of the Atkinson school and that they were considered "leaders" among the faculty in this respect. In early 1997, Leary was involved in presenting complaints — and ultimately a petition — to the School-Based Decision Making Committee, a sort of mini-school board that consisted of Atkinson employees and governed Atkinson alone, regarding the school's handling of student discipline. Leary had also been particularly critical of the changes to the ECE program proposed by Bowlds and the rest of the administration in the spring of 1999, suggesting that the changes could put the school in violation of the law. Furthermore, Williams was a teachers' union (JCTA) representative and therefore had voiced a number of concerns over the years to Howard on behalf of other teachers — as often as every two weeks, according to Howard.

The defense witnesses gave reasons for transferring the plaintiffs that were unrelated to the plaintiffs' vocal criticism of school policy, however. Bowlds testified that she believed that Leary and Williams had leadership problems and were not "team players." She claimed that both plaintiffs had failed to attend the meetings of certain committees that they were involved with. Bowlds also noted that Leary had a

---

[2]Section D of the CBA provides:
The Superintendent or designee for good cause and extenuating circumstances will execute transfers as may be necessary for the efficient operation of the school district.
J.A. at 26 (CBA § D).

propensity for yelling at students and colleagues alike. Bowlds admitted that her problems with the plaintiffs were not related to the plaintiffs' competence in the classroom, and in fact, that she had not even reviewed the plaintiffs' (uncontrovertedly positive) job evaluations before designating them for transfer. Howards testified that Leary had explicitly indicated her unwillingness to adopt the "collaborative model" in her classroom and agreed that Leary was not a "team player." J.A. at 199-200 (Howard Test.). Howard had similar things to say about Williams, and further complained that Williams had continually questioned Howard's authority. At one point during her deposition, Howard conceded that Leary was probably transferred because of her speaking out on various issues and because of "other things," but then immediately backtracked from this testimony. J.A. at 199-202.

The plaintiffs filed suit on July 16, 1999, in the U.S. District Court for the Western District of Kentucky, alleging that school board superintendent Stephen Daeschner had violated their rights to free speech in violation of the First and Fourteenth Amendments to the U.S. Constitution and their rights to procedural due process, in violation of the Fourteenth Amendment. They requested preliminary and permanent injunctive relief as well as declaratory relief. The district court held hearings on August 5, 6, 12, and 13, in order to attempt to resolve the matter of the preliminary injunction before the Atkinson students were scheduled to return to school on August 17, 1999. On August 13, 1999, the district court orally ruled against the plaintiffs on their First Amendment claim but found that they were entitled to more process than they had received before their transfer was effected. Therefore, the district court enjoined the school board from transferring Leary and Williams until they had been afforded "notice of the proposed transfer, a statement of the reasons [therefor], and an opportunity to be heard." J.A. at 379-81 (Tr. of Hr'g).

On the morning of August 16, 1999, Leary and Williams were given written notice of their transfer, which listed

## 2. What Process Is Due

When a plaintiff has a protected property interest, a predeprivation hearing of some sort is generally required to satisfy the dictates of due process. *See Loudermill*, 470 U.S. at 542; *Roth*, 408 U.S. at 569-70 ("When protected interests are implicated, the right to some kind of prior hearing is paramount."). The predeprivation process need not always be elaborate, however; the amount of process required depends, in part, on the importance of the interests at stake. *See Loudermill*, 470 U.S. at 542; *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899-901 (8th Cir.), *cert. denied*, 513 U.S. 964 (1994). Thus, when deciding on the necessary process, this court must balance "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous" decision. *Loudermill*, 470 U.S. at 542-43 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Moreover, the sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required. *See, e.g.*, *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1349 (6th Cir. 1992). In some cases, postdeprivation review may possibly be sufficient, and no predeprivation process is required. *See Ramsey*, 844 F.2d at 1272-74.

In this case, a predeprivation hearing was required. Admittedly, the plaintiffs' interest in not being transferred is not as great as that of the plaintiff in *Loudermill* in not losing his job altogether. *See Loudermill*, 470 U.S. at 543 (emphasizing the "severity of depriving a person of the means of livelihood"). However, there is sufficient reason to believe, based on the record evidence adduced by the plaintiffs, that an involuntary transfer carries with it significant costs for the transferee, including stigma, loss of professional esteem, and the difficulty of rebuilding relationships and professional status within the new school. *See* J.A. at 101-03 (Drescher Test.) (describing the stigma

the requirement that employees may be dismissed only for cause. *See, e.g.*, *Loudermill*, 470 U.S. at 538-39 (holding that a property interest in continued employment was created by a state statute permitting dismissal only for "misfeasance, malfeasance, or nonfeasance"); *Johnston-Taylor*, 907 F.2d at 1581 (holding that tenured professors have a property interest in continued employment); *Ramsey v. Board of Educ.*, 844 F.2d 1268, 1272 (6th Cir. 1988) (holding that a state statute and a school board policy providing for accumulation of sick days by public employees created a property interest in those sick days). Thus, the defendants' argument that, under Kentucky law, teachers have an entitlement to employment in a particular district, not in a particular position, is possibly correct but irrelevant. *See, e.g.*, *Banks v. Burkich*, 788 F.2d 1161, 1164 (6th Cir. 1986). The plaintiffs rely on the CBA, not Kentucky statutory law, for their entitlement to continued employment in a particular position, and it is clear that such an entitlement may be created by "either explicit or implied contractual terms." *Ramsey*, 844 F.2d at 1271. In none of the cases cited by Daeschner for the proposition that a teacher does not have a property right in a particular position within the school district under Kentucky law had the parties executed a contract that explicitly purported to limit the authority of the superintendent to effect such transfers to cases in which there was good cause. *See generally Banks*, 788 F.2d 1161; *Board of Educ. v. Jayne*, 812 S.W.2d 129 (Ky. 1991); *Snapp v. Deskins*, 450 S.W.2d 246, 251 (Ky. 1970); *cf. Huff v. Harlan County Bd. of Educ.*, 408 S.W.2d 457, 458 (Ky. 1966) ("The rule concerning employment under a continuing service contract is that such contract does not prevent the Board of Education from transferring the employee from one school to another or from one class of teaching position to another unless the contract specifies the school or class of position in which the teacher is to be employed. Neither was specified here."). The district court therefore correctly concluded that Section D of the CBA created a property interest in continued employment at Atkinson.

several reasons for the transfer and gave them the opportunity to respond to those reasons at hearings scheduled for 12:00 p.m. and 1:00 p.m. that day, respectively. On the advice of counsel, the plaintiffs declined to participate in those hearings. Instead, the plaintiffs filed a "Motion in Furtherance of Preliminary Injunction; and for Order of Contempt in Regard to Superintendent Stephen W. Daeschner," arguing that the school board had acted in violation of the court's order by refusing to reinstate the plaintiffs to their previous positions. J.A. at 38 (Pls.' Mot. in Furtherance of Prelim. Inj. and for Order of Contempt). The district court held a telephonic hearing that day with two counsel for the defendant and one of the plaintiffs' counsel, since the other plaintiffs' counsel could not be reached. The district court determined that the plaintiffs had been afforded all the process that they were due and had waived their due process rights by refusing to attend the hearing. The court found no problem with the manner in which the hearing was provided to the plaintiffs by the school board, given the exigent circumstances created by the imminent start of the school year. The district court thereby, in effect, dissolved its prior injunction. This timely appeal followed. The defendants also cross-appealed the district court's original ruling in favor of the plaintiffs on their due process claim.

## II. ANALYSIS

### A. Preliminary Injunction Standard

When deciding whether to issue a preliminary injunction, the district court considers the following four factors:

(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v.*

*Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction. *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998); *McPherson*, 119 F.3d at 459.

This court reviews the district court's decision for an abuse of discretion. *See McPherson*, 119 F.3d at 459. Thus, "the district court's 'weighing and balancing of the equities of a particular case is overruled only in the rarest of cases.'" *Id.* (quoting *Sandison*, 64 F.3d at 1030). Moreover, the district court's factual findings must be clearly erroneous in order for this court to find that it abused its discretion. *See UFCW*, 163 F.3d at 347. If pure legal conclusions are involved in the district court's determination, however, those conclusions are subject to de novo review. *See McPherson*, 119 F.3d at 459.

**B. First Amendment Retaliation Claim**

A public employee who would succeed on a claim of retaliation in violation of the First Amendment must demonstrate

(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the plaintiff makes this showing, the burden then shifts to the defendant to show by a preponderance of the evidence "that it would have taken the same action even in the absence of the protected conduct." *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) (quotation omitted); *see also Mt. Healthy*, 429 U.S. at 287.

In considering the plaintiffs' claims for violation of their due process rights, this court undertakes a two-step analysis. First, we determine whether the plaintiffs have a property interest that entitles them to due process protection. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). A contract, such as a collective bargaining agreement, may create a property interest. *See, e.g.*, *id.* at 577-78; *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). Second, if the plaintiffs have such an interest, this court must then determine "what process is due." *Loudermill*, 470 U.S. at 541 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). This determination is one of federal law and thus is not limited by the procedures that the state may have deemed to be adequate when it created the property right. *See id.*

**1. Existence of a Property Interest**

The district court correctly decided that the CBA between the school board and the JCTA created for the plaintiffs a property interest in their positions at Atkinson. Section D of that CBA apparently provides that teachers may not be transferred within the school district except on a showing of "good cause" *and* "extenuating circumstances." J.A. at 26 (Section D). This requirement is at least as stringent as those found in other cases, in the Supreme Court and this court, to create a property interest in continued employment, such as

---

Daeschner cites cases for the proposition that appellants who do not raise an argument on appeal waive that argument, but he cites no such cases suggesting the same is true for appellees. Indeed, this court can affirm the district court on any basis supported by the record. *See Warda v. Commissioner*, 15 F.3d 533, 539 n.6 (6th Cir.), *cert. denied*, 513 U.S. 808 (1994).

plaintiffs were therefore entitled to some minimal degree of predeprivation due process, including notice, a statement of reasons for the transfer, and an opportunity to be heard, and that they had not received this process. The district court noted that the postdeprivation grievance procedure outlined in the CBA was not sufficient. Thus, the district court enjoined the transfer until the plaintiffs were afforded due process. That court subsequently found, however, that the school board had afforded sufficient process to them when it notified them one morning that they would have a hearing a few hours later, and that the plaintiffs waived this process by not attending the hearing.

The plaintiffs now argue that the process afforded by the school board was insufficient. Specifically, the plaintiffs claim that they were given insufficient time — a few hours — to prepare adequately for the hearing and that the school board indicated that it would proceed to transfer the plaintiffs regardless of the outcome of the hearing. They thus appeal the district court's denial of their "Motion in Furtherance of Preliminary Injunction."[6] Daeschner argues, in response, that the process afforded the plaintiffs was constitutionally sufficient, given the particular circumstances of this case. In his cross-appeal, Daeschner also argues that the plaintiffs had no property interest in their positions at Atkinson in the first place, and therefore that they were not entitled to any due process before being transferred.[7]

---

interpretation.

[6] The plaintiffs do not, however, discuss the district court's denial of their motion to hold Daeschner in contempt for refusing to reinstate the plaintiffs to their original positions; therefore, we deem that issue waived on appeal.

[7] Daeschner also argues that the plaintiffs have "waived" the issue of whether they had a property interest in their employment by not responding to Daeschner's cross-appeal on this basis in their reply brief. This court cannot be forced to reverse the district court due merely to the cross-appellees' failure to respond to the cross-appellant's arguments.

When the plaintiff is a public employee, she must make additional showings to demonstrate that her conduct was protected. First, the employee must show that her speech touched on matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983). Second, the employee's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *see Connick*, 461 U.S. at 149-52; *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir. 1991). Whether the plaintiff's speech constituted protected conduct is a question of law, reviewed by this court de novo. *See Connick*, 461 U.S. at 148 n.7; *Langford v. Lane*, 921 F.2d 677, 680 (6th Cir. 1991).

The district court found that, although the plaintiffs' speech was largely on matters of public concern and therefore constituted protected speech under the First Amendment, the plaintiffs had failed to show that their speech was a substantial or motivating factor in the decision to transfer them. Concluding that the plaintiffs did not show a likelihood of success on the merits, the district court refused to grant a preliminary injunction on this basis.

### 1. Protected Activity

As the district court found, the vast majority of the plaintiffs' speech involved matters of public concern. The subjects of student discipline and the appropriate educational program to be implemented are undoubtedly matters of concern to the community at large. *See Jackson*, 168 F.3d at 910 (describing matters of public concern as matters of "political, social, or other concern to the community" (quoting *Connick*, 461 U.S. at 146)). Leary's comments suggesting that the proposed educational changes would result in violations of the law, moreover, are undoubtedly of the highest public concern, since they hint at possible wrongdoing by public officials. *Cf. Bloch*, 156 F.3d at 678 ("The First Amendment clearly protects the Blochs' right to criticize

Ribar in his role as a public official."); *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988) (noting that charges of public corruption are entitled to constitutional protection), *cert. denied*, 488 U.S. 1007 (1989).

Determining whether the plaintiffs' interest in speaking outweighed the school district's interest in performing its function efficiently requires a "particularized balancing" of the various interests at stake, and if an employee's speech "substantially involved matters of public concern," an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action. *Connick*, 461 U.S. at 150-52. In the plaintiffs' favor, as noted above, is the fact that most of their speech unquestionably involved important matters of great public concern. In Daeschner's favor, however, is the fact that the Atkinson school was undoubtedly in a state of near-crisis, and radical and decisive action appeared to be required in order to improve the school's functioning; thus, the school board's interest in performing its function efficiently was particularly strong. Adding to the strength of Daeschner's case is evidence suggesting that the plaintiffs' speech was often conducted in a disruptive manner. For example, Leary was known to "yell" at her colleagues, and Williams apparently visited Howard quite often and consistently questioned her authority as principal. *See Connick*, 461 U.S. at 154 (holding that the First Amendment does not require an employer to "tolerate action which he reasonably believed would disrupt the office, *undermine his authority*, and destroy close working relationships" (emphasis added)); *McGill v. Board of Educ.*, 602 F.2d 774, 777 (7th Cir. 1979); *cf. Pickering*, 391 U.S. at 572-73 (noting that the employer school's interest in limiting a teacher's speech is not great when those public statements "are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally") (footnote omitted). Finally, to the extent that the plaintiffs' speech occurred in private — such as in the principal's office, or informally within the walls of

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996). We do not believe, however, that Daeschner can insulate himself from liability for violating the plaintiffs' First Amendment rights merely by showing that he did not know the plaintiffs personally. *See Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81-82 (6th Cir. 1995) (noting that a supervisor need not know the injured party personally to be held liable for that party's injuries; rather, "the correct inquiry is whether he had knowledge about the substantial risk of serious harm to a particular class of persons"). Moreover, because Daeschner was primarily responsible for approving the transfer of teachers, he could possibly be held responsible for failing to perform his job properly or for acquiescing in the constitutional violations resulting from his delegation of this responsibility. *See id.* at 81; *see generally Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (noting the "more generalized" approach to causation in suits seeking injunctive relief, as opposed to damages); *Williams v. Bennett*, 689 F.2d 1370, 1383-84 (11th Cir. 1982) (same). In particular, Daeschner might be liable if the plaintiffs can show that he encouraged his subordinates to transfer teachers who were particularly vocal in speaking out against school policy through his mandate to transfer those teachers who were not "team players."

## C.  Due Process Claim

The district court found for the plaintiffs on their due process claim, concluding that the CBA between the JCTA and the Board of Education, which provided that a teacher could be transferred only "for good cause and extenuating circumstances . . . as may be necessary for the efficient operation of the school district," J.A. at 26 (CBA § D), gave the plaintiffs a property interest in their particular positions within the school district.[5] The district court found that the

---

[5]In fact, Section D does not say that the Superintendent may effect transfers "only" for the reasons suggested by the appellant; however, both parties appear to understand the language of Section D as permitting transfers only for those reasons. We do not, therefore, question that

Because we hold that the district court's conclusion regarding the causal relationship between the plaintiffs' speech and their transfer is not clearly erroneous, we need not express an opinion about Daeschner's argument that he cannot be found liable because the plaintiffs cannot show that Daeschner himself, who undisputedly did not know the plaintiffs personally, had a retaliatory motive in approving the transfer. However, we note our doubts as to the validity of this contention. As a supervisor, Daeschner can be held liable under § 1983 only if he "encouraged the specific incident of misconduct or in some other way directly participated in it," or "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."[4] *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). Merely having the right to control employees is not enough, *see Monell*, 436 U.S. at 694, nor is merely being aware of the misconduct, *see*

---

PROCEDURE § 2948.3, at 184-188 (2d ed. 1995) (noting that the plaintiff generally must show at least some probability of success on the merits in order to obtain a preliminary injunction). We nonetheless note that it is generally useful for the district court to analyze all four of the preliminary injunction factors, especially since our analysis of one of the factors may differ somewhat from the district court's. In the instant case, however, the district court's decision depended entirely on its resolution of a factual dispute as to whether the plaintiffs had shown that their protected conduct motivated their transfer, and we are required to defer to that resolution. Therefore, we are bound, in this case, on review of the denial of the preliminary injunction, to accept the district court's conclusion that the plaintiffs had no likelihood of success on the merits, and it is not necessary for us to remand in order for the district court to analyze the likelihood of irreparable harm to the plaintiffs, the potential for harm to others, and the public interest in the issuance of the injunction.

[4]We assume, without deciding, that the prohibition on respondeat superior liability for municipal officers also applies where the plaintiffs are seeking injunctive relief rather than damages. *See Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976); *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 990, 997 (11th Cir. 1990). *But see Chaloux v. Killeen*, 886 F.2d 247, 250-51 (9th Cir. 1989) (holding that plaintiffs need not show an "official policy or custom" in order to hold a municipality liable for injunctive relief under § 1983).

the school — the potentially disruptive manner of that speech again weighs in favor of the school board's interest in limiting it. *See Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415 n.4 (1979) (noting that the time, manner, and place in which private speech is delivered may be a significant factor in the determination whether the employer's efficiency is threatened by that speech).

On balance, however, the plaintiffs' speaking out on discipline, choice of educational approaches, and potential violations of the law by the school district is of sufficient public importance to outweigh the employer's interest in limiting that speech. Moreover, the school board has essentially conceded the point. *See* Appellee's Br. at 26. Thus, we hold that the plaintiffs' speech was protected by the First Amendment.

### 2. Adverse Action

The school board does not dispute that the involuntary transfer of the plaintiffs would have a sufficient chilling effect to qualify as an adverse action under the First Amendment retaliation analysis. *See* Appellee's Br. at 26. This position is supported by our case law. *See, e.g.*, *Boger*, 950 F.2d at 321-23.

### 3. Motivating Factor

The most problematic aspect of the plaintiffs' First Amendment claim is showing that their speech was a substantial or motivating factor in the decision to transfer them. The district court found that the plaintiffs did not make a sufficient showing that their transfer was so motivated for two reasons. First, the court noted that Howard had decided to leave her position as principal of Atkinson shortly before the transfers were arranged; therefore, the court concluded, Howard would have little incentive to get the plaintiffs out of her way if she was not staying at Atkinson. Second, the court noted that the various incidents of protected speech occurred over a period of several years, which weakened the inference of retaliation or causation. Furthermore, it appears that the

district court credited the testimony of Bowlds and Howard as to the reasons for the plaintiffs' transfer. The district court's conclusion regarding causation concerns a question of fact and is therefore reviewed by this court for clear error. *See Langford*, 921 F.2d at 680.

The plaintiffs advance numerous reasons why the district court's conclusion is faulty. Primarily, they take issue with the district court's interpretation of the facts, arguing, for example, that the remoteness in time between the plaintiffs' speech and the alleged retaliation is due to the fact that Howard and Bowlds had no real opportunity to retaliate against the plaintiffs before then. Moreover, they question the speculative logic of the district court's finding that Howard had no motive to retaliate against the plaintiffs because she was leaving. Finally, the plaintiffs point to copious evidence that could suggest that Bowlds's and Howard's asserted reasons for marking them for transfer were pretextual, including, *inter alia*, the plaintiffs' consistently high performance evaluations.

The question whether the plaintiffs' speech was a motivating factor in Bowlds's and Howard's decision to recommend them for transfer is a close one. We note that the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, for example, and we therefore express no opinion as to the ultimate merits of the plaintiffs' case. *See generally Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 818-19 (4th Cir. 1991) (observing that the standard for obtaining a preliminary injunction is higher than the standard for surviving summary judgment); *William G. Wilcox, D.O., P.C. Employees' Defined Benefit Pension Trust v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) (noting that "a trial court's disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits"); *National Wildlife Fed'n v. Burford*, 878 F.2d 422, 432 (D.C. Cir. 1989) ("To obtain a preliminary injunction, [the plaintiff] not only had to demonstrate specific

harm, but also carry the *burden of persuasion*, showing a likelihood of success on the merits. On a motion for summary judgment, a plaintiff need only create a jury issue."), *rev'd on other grounds sub nom. Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990). This is because the preliminary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel*, 952 F.2d at 811 (quotation omitted) (alteration in original); *see also Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Moreover, the standard of review that this court must apply to the district court's findings on a preliminary injunction motion is highly deferential. *See UFCW*, 163 F.3d at 347; *McPherson*, 119 F.3d at 459. Thus, we do not decide whether we would grant a preliminary injunction if we were acting in the place of the district court, nor do we decide whether summary judgment is appropriate. Rather, given the closeness of the question, and the fact that the plaintiffs' arguments, while shedding some doubt on the district court's interpretation of the facts, do not show the district court's factual findings to be clearly erroneous, we affirm the district court's conclusion that the plaintiffs have not, for the purpose of the preliminary injunction, shown that the plaintiffs' transfer was motivated by their protected speech, and therefore that the plaintiffs have not shown a strong likelihood of success on the merits.[3]

---

[3]Because the district court found that the plaintiffs' transfer was not motivated by their speech, it found that the plaintiffs did not have a substantial likelihood of success on the merits, and therefore the district court did not make findings on the record with respect to the remaining three factors to be considered when determining whether a preliminary injunction should issue. Since the district court apparently considered that the failure of the plaintiffs to show a likelihood of success on the merits was significant enough to prevent the injunction from issuing, such additional findings were not necessary. *See generally American Imaging Servs., Inc. v. Eagle-Pitcher Indus., Inc. (*In re *Eagle Pitcher Indus., Inc.)*, 963 F.2d 855, 862 (6th Cir. 1992) (stating that the district court is not required to make findings on factors that are not dispositive with respect to the issuance of a preliminary injunction); 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE &