**In re LTV STEEL COMPANY, INC., et al., Debtors.**

No. 00–43866.

United States Bankruptcy Court, N.D. Ohio.

Feb. 5, 2001.

 

Richard M. Cieri, Cleveland, OH, for debtor.

Eric A. Schaffer, Pittsburgh, PA, for Creditors' Committee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the emergency motion of Abbey National Treasury Services PLC ("Abbey National") for modification of an interim order entered by the Court on December 29, 2000. That order permitted LTV Steel Company, Inc., Debtor and Debtor–in–Possession in these jointly administered proceedings ("Debtor"), to use cash assets that are claimed to be cash collateral in which Abbey National has an interest. A hearing was held on this matter on January 18, 2001. Richard M. Cieri, Esq. and Bruce Bennett, Esq. appeared on behalf of Debtor. Thomas D. Lambros, Esq., David Spears, Esq. and Lindsee P. Granfield, Esq. appeared on behalf of Abbey National. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(M) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

## DISCUSSION

### A. Facts

Debtor is one of the largest manufacturers of wholly-integrated steel products in the United States. Debtor mainly produces flat rolled steel products, hot and cold rolled sheet metal, mechanical and structural tubular products, and bimetallic wire. Debtor currently employs approximately 17,500 people in various capacities, and Debtor is also responsible for provid-

ing medical coverage and other benefits to approximately 100,000 retirees and their dependents. Debtor and 48 of its subsidiaries filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code, on December 29, 2000. These cases are jointly administered.

This is not the first occasion on which Debtor has filed for relief under the Bankruptcy Code. Debtor previously filed a voluntary Chapter 11 petition in the Bankruptcy Court for the Southern District of New York on July 17, 1986. Debtor successfully emerged from Chapter 11 on June 28, 1993. Indeed, the current controversy stems from a series of financial transactions that Debtor executed after its previous reorganization. The transactions in question are known as asset-backed securitization or structured financing ("ABS"), and are generally designed to permit a debtor to borrow funds at a reduced cost in exchange for a lender securing the loan with assets that are transferred from the borrower to another entity. By structuring the transactions in this manner, the lender hopes to ensure that its collateral will be excluded from the borrower's bankruptcy estate in the event that the borrower files a bankruptcy petition.

Abbey National is a large financial institution located in the United Kingdom. Debtor and Abbey National entered into an ABS transaction in October 1994. To effectuate this agreement, Debtor created a wholly-owned subsidiary known as LTV Sales Finance Co. ("Sales Finance"). Debtor then entered into an agreement with Sales Finance which purports to sell all of Debtor's right and interest in its accounts receivable ("receivables") to Sales Finance on a continuing basis. Abbey National then agreed to loan Two Hundred Seventy Million Dollars ($270,-000,000.00) to Sales Finance in exchange

for Sales Finance granting Abbey National a security interest in the receivables. On the date Debtor's petition was filed, Chase Manhattan Bank ("Chase Manhattan") was Abbey National's agent for this credit facility.

In 1998, Debtor entered into another ABS financing arrangement. To that end, Debtor created LTV Steel Products, LLC ("Steel Products"), another wholly-owned subsidiary. Debtor entered into an agreement with Steel Products which purports to sell all of Debtor's right, title and interest in its inventory to Steel Products on a continuing basis. Chase Manhattan and several other banking institutions then agreed to loan Thirty Million Dollars ($30,-000,000.00) to Steel Products in exchange for a security interest in Steel Products' inventory. Abbey National is not involved in this ABS facility, and it had no interest in pre-petition inventory allegedly owned by Steel Products.

Neither Sales Finance nor Steel Products is a debtor in this proceeding. Nevertheless, Debtor filed a motion with the Court on December 29, 2000 seeking an interim order permitting it to use cash collateral. This cash collateral consisted of the receivables and inventory that are ostensibly owned by Sales Finance and Steel Products. Debtors stated to the Court that it would be forced to shut it doors and cease operations if it did not receive authorization to use this cash collateral. A hearing was held on Debtor's cash collateral motion on December 29, 2000 as part of the first day hearings.

Abbey National was not present at the cash collateral hearing. However, the Court notes that Abbey National had actual notice of the hearing, first, in the form of an e-mail sent by a Chase Manhattan employee to Abbey National on December 28, 2000, and second, in the form of a telephone call made from a Chase Manhat-

tan employee to Abbey National on December 29, 2000. Furthermore, it is clear that Debtor had given advance notice of its intention to file for bankruptcy protection to Chase Manhattan, Abbey National's agent, in the week prior to December 29, 2000. Chase Manhattan was present at the December 29, 2000 hearing.

On December 29, 2000, Debtor and Chase Manhattan reached an agreement regarding an interim order permitting Debtor to use the cash collateral. Chase Manhattan did not formally consent to the entry of this order, as it could not secure Abbey National's consent to the form of the order, but Chase Manhattan did negotiate some of the terms of the order and did not raise an objection to its entry by the Court. The Court determined that entry of the interim order was necessary to permit Debtor to continue business operations, that the interests of Abbey National and all other creditors who had an interest in the cash collateral were adequately protected by the order, and that entry of the order was in the best interests of the estate and creditors of the estate. Accordingly, the Court entered the order tendered by Debtor, the relevant provisions of which are summarized below:

1. Recognition that there is a dispute between Debtor and the secured lenders of Sales Finance and Steel Products as to whether the transactions between Debtor and those entities were true sales or disguised financing vehicles;

2. An order requiring the secured lenders to turn over to Debtor the cash proceeds of the inventory and receivables which are to be used to provide working capital for Debtor;

3. Recognition that in the event the Court determines these transactions to be true sales, the secured lenders whose cash collateral was used will be entitled to administrative expense claims against the estate;

4. Adequate protection was provided to the secured lenders in the form of senior liens on the inventory and receivables and weekly interest payments to the lenders at pre-petition non-default rates.

It is this order that Abbey National seeks to modify. Specifically, Abbey National asks the Court to modify the interim cash collateral order *nunc pro tunc* to include the following provisions:

a. The Debtors shall transfer to Sales Finance all receivables created on or after December 29, 2000 and not previously sold to Sales Finance and that would have been sold to Sales Finance were it not for the occurrence of a Liquidation Event;

b. Steel Products would continue to purchase Inventory from the Inventory Sellers and Sales Finance would continue to purchase Receivables from the Receivables Sellers, each on the same basis and on the same terms as existed prior to the Petition Date;

c. The respective Collection Accounts would be administered by the Collateral Agent in the same manner as was administered prior to the Petition Date. Therefore, notwithstanding the occurrence of any Termination Date, collection on account of the Receivables would not be required to be applied to principal payments or amortization payments (other than any payments required in connection with the maintenance by the borrowers of their respective borrowing bases);

d. Steel Products and the Collateral Agent under the Inventory Facility would continue to automatically release all liens against the Receiv-

ables purchased by Sales Finance from Steel Products;

e. All minimum borrowing base and collateral value requirements set forth in the Receivables Facility and the Inventory Facility will continue in full force and effect;

f. In all other respects, the Receivables Facility and the Inventory Facility will continue to operate as required after the occurrence of a Liquidation Event including without limitation, the reimbursement of all expenses of each Receivables Lender and Inventory Lender.

(Abbey National's Emergency Motion to Modify Interim Order at 14–16).

Abbey National argues that the interim cash collateral order should be modified because: 1) it did not receive effective notice of the December 29, 2000 hearing and was thus denied due process of law; 2) there is no basis for the Court to determine that the receivables which are Abbey National's collateral are property of Debtor's estate and 3) that even if the receivables are property of Debtor's estate, that Abbey National's interests are not adequately protected because the pre-petition receivables are diminishing at a rapid rate and will soon be depleted. Debtor argues that Abbey National did receive notice of the December 29 hearing, that Abbey National has failed to state grounds to modify the interim order pursuant to Fed. R. Bankr. P. 9024, and that Abbey National's interests in the receivables are adequately protected.

### B. Issue

There are four issues before the Court. These are: 1) the procedural basis for Abbey National's motion; 2) whether the circumstances surrounding the December 29, 2000 hearing deprived Abbey National of its right to due process; 3) whether the interim order should be modified because

the cash collateral was not property of Debtor's estate; and 4) whether the interim order failed to adequately protect Abbey National's interest in the collateral.

### C. Analysis

#### 1. Procedural Basis for Abbey National's Motion

As a preliminary matter, the Court must address the procedural basis for Abbey National's motion. Abbey National has not cited a single rule of civil or bankruptcy procedure in support of its motion. Debtor contends that because Abbey National's motion seeks to modify a previous order of the Court, it must be construed as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b), made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9024. Abbey National has not responded to this contention. Because it is clear that Abbey National is seeking relief from the Court's interim order, we shall treat Abbey National's motion as a motion brought under Rule 60(b).

The decision to grant a motion for relief under Rule 60(b) lies within the Court's discretion. *Miller v. Owsianowski (In re Salem Mortgage Co.)*, 791 F.2d 456, 459 (6th Cir.1986). A Rule 60(b) motion may be granted for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

Because Abbey National has not presented its arguments in conformity with Rule 60(b), we shall address Abbey Na-

tional's arguments in relation to the subsections of Rule 60(b) that appear to coincide with those arguments. We can safely say at the outset that Abbey National has not raised any argument relating to newly discovered evidence or the satisfaction of a judgment and thus we will not consider those elements of Rule 60(b).

## 2. Due Process

■ Abbey National's first argument in support of its motion is that it did not have "effective notice" of the cash collateral hearing and that Chase Manhattan, as Abbey National's agent, supported the entry of the interim order without its consent. Abbey National contends that by entering the interim order under these circumstances, it was deprived of due process. We treat these arguments as being raised under Rule 60(b)(1) and (3) for surprise and or/fraud by an adverse party.

■ Abbey National's argument that the circumstances surrounding the December 29, 2000 hearing deprived it of due process is not well taken. The Court recognizes that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753, 756, 139 L.Ed.2d 695 (1998). In considering Abbey National's claim that it was deprived of due process, we must consider if it has a property interest that entitles it to due process protection and, if such an interest exists, what process is due. *Leary v. Daeschner*, 228 F.3d 729, 741–42 (6th Cir.2000). It is not contended by either party that Abbey National lacks a property interest in its collateral, nor that the interim cash collateral order deprives Abbey National of the full use of its property because the order prevents Abbey National from exercising its state law rights against the receivables. Accordingly, Abbey National was entitled to a pre-deprivation hearing. *Id.* at 743.

■ Determination of the mandates of the due process clause in a specific circumstance requires the Court to consider three factors: the private interest affected by the deprivation; the risk of an erroneous deprivation and the probable value of additional safeguards; and the interest of the party seeking a remedy prior to a final hearing. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also Connecticut v. Doehr*, 501 U.S. 1, 11, 111 S.Ct. 2105, 2112, 115 L.Ed.2d 1 (1991). However, "[t]he usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974) (quoting *Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931)).

Addressing the three *Mathews* factors, it is clear that Abbey National has a significant interest in the cash collateral, and that the terms of the interim order deprive Abbey National from immediately exercising its state law collection rights against the collateral. However, Abbey National has failed to adequately explain why the hearing of December 29, 2000 failed to meet the requirements of due process. Abbey National and its agent had actual notice of that hearing, Abbey National's agent had a full and fair opportunity to appear before the Court and object to entry of the order, and Abbey National was in direct communication with its agent before the hearing. Additionally, the terms of the interim order provided adequate protection to Abbey National's interest. Furthermore, the hearing was held in open Court with counsel of various parties present. These facts distinguish this case from the ex parte proceedings found to

violate due process in *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Doehr*, 501 U.S. at 18, 111 S.Ct. at 2116.

Moreover, Abbey National has failed to point out any additional safeguards that would have provided better protection to it than those already provided. This would be a difficult task in any event, for in addition to the initial hearing and adequate protection granted to protect Abbey National's interest, the Court has established rather elaborate post-deprivation procedures, detailed more fully below, to ensure that Abbey National has a full and fair opportunity to present its arguments to the Court. Accordingly, the Court concludes that the risk that the December 29 hearing resulted in an erroneous deprivation of Abbey National's interest in the cash collateral is remote.

Finally, it is clear that Debtor has a significant interest in the cash collateral that was the subject of the interim order. The Court is satisfied that without entry of the interim order, Debtor would have been forced to immediately cease its business operations. Such an occurrence would have eliminated Debtor's chance to reorganize its business and would have had dire consequences for Debtor's employees, customers and creditors. We find that Debtor's interest in the collateral thus outweighed Abbey National's interest, at least for purposes of determining the amount of ·process to which Abbey National was entitled.

■ Based upon this analysis, the Court concludes that the circumstances surrounding the hearing of December 29, 2000 provided Abbey National with sufficient due process. It is clear that "the sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required." *Leary*, 228 F.3d at 743. In this instance the Court has provided substantial and elaborate procedures to ensure that Abbey National is afforded every opportunity to further its objections to the cash collateral order. A final hearing has been set in this matter for March 7, 2001, and the Court has permitted both parties an opportunity to conduct extensive discovery prior to that hearing. Furthermore, the Court conditioned the entry of its interim order on the granting of adequate protection to Abbey National's interest in the cash collateral, and the Court is satisfied that such protection will fully protect Abbey National's interest. Furthermore, in the event that Abbey National succeeds in its claim that the transfer of receivables to Sales Finance was in fact a true sale, Abbey National has an adequate remedy against Debtor in the fact that the terms of the interim order would grant Abbey National an administrative claim against Debtor's estate. The Court concludes that these elaborate procedures are more than sufficient to ensure that Abbey National is not deprived of its right to due process.

The Court's analysis of Abbey National's due process argument indicates that Abbey National was not unduly surprised by the entry of the interim order. Indeed, the fact that Abbey National will have a full and fair opportunity to prosecute its objections to the entry of a final cash collateral order weighs against granting them relief from judgment on the basis of surprise. Furthermore, to the extent that Abbey National has suggested that Chase Manhattan and Debtor conspired to misrepresent the extent of Abbey National's interest in the receivables as well as its objection to entry of the interim order, the

Court finds that this characterization of the events of December 29, 2000 is inaccurate. Counsel for Chase Manhattan and Debtor made it quite clear that a major lender did not consent to the entry of the interim order, which was why Chase Manhattan did not consent to its entry. Because we conclude that neither Chase Manhattan nor Debtor misrepresented these matters to the Court, there is no basis for us to grant relief from the interim order on the basis of fraud. Accordingly, the Court concludes that relief from the interim order is not appropriate pursuant to Rule 60(b)(1) and (3).

### 3. Whether the Receivables Are Property of Debtor's Estate

Abbey National's next argument is that the receivables which constitute its collateral are not property of Debtor's estate, and thus this Court lacked jurisdiction to enter the interim order. We shall construe this as an argument that the interim order is void pursuant to Rule 60(b)(4).

■ Section 541(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy petition an estate is created consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The estate created by the filing of a Chapter 11 petition is very broad, and property may be included in Debtor's estate even if Debtor does not have a possessory interest in that property. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 205–06, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983).

■ Abbey National contends that the interim order is flawed because, on its face, the transaction between Debtor and Sales Finance is characterized as a true sale. Therefore, Abbey National argues, since Debtor sold its interests in the receivables to Sales Finance, Debtor no long-

er has an interest in the receivables and they are not property of the estate. However, Abbey National has admitted to the Court, both in its pleadings and in oral argument, that the ultimate issue of whether Debtor actually sold the receivables to Sales Finance is a fact-intensive issue that cannot be resolved without extensive discovery and an evidentiary hearing.

We find Abbey National's argument for "emergency" relief to be not well taken for several reasons. First, Abbey National's position in this regard is circular: we cannot permit Debtor to use cash collateral because it is not property of the estate, but we cannot determine if it is property of the estate until we hold an evidentiary hearing. We fail to see how we can conclude that the receivables are not property of Debtor's estate until an evidentiary hearing on that issue has been held. Because the determination of this issue must await further discovery, we decline to grant Abbey National relief from the interim order.

Furthermore, there seems to be an element of sophistry to suggest that Debtor does not retain at least an *equitable* interest in the property that is subject to the interim order. Debtor's business requires it to purchase, melt, mold and cast various metal products. To suggest that Debtor lacks some ownership interest in products that it creates with its own labor, as well as the proceeds to be derived from that labor, is difficult to accept. Accordingly, the Court concludes that Debtor has at least some equitable interest in the inventory and receivables, and that this interest is property of the Debtor's estate. This equitable interest is sufficient to support the entry of the interim cash collateral order.

Finally, it is readily apparent that granting Abbey National relief from the interim cash collateral order would be highly ineq-

uitable. The Court is satisfied that the entry of the interim order was necessary to enable Debtor to keep its doors open and continue to meet its obligations to its employees, retirees, customers and creditors. Allowing Abbey National to modify the order would allow Abbey National to enforce its state law rights as a secured lender to look to the collateral in satisfaction of this debt. This circumstance would put an immediate end to Debtor's business, would put thousands of people out of work, would deprive 100,000 retirees of needed medical benefits, and would have more far reaching economic effects on the geographic areas where Debtor does business. However, maintaining the current status quo permits Debtor to remain in business while it searches for substitute financing, and adequately protects and preserves Abbey National's rights. The equities of this situation highly favor Debtor. As a result, the Court declines to exercise its discretion to modify the interim order pursuant to Rule 60(b)(4).

### 4. Adequate Protection

The final argument Abbey National has raised in support of its motion is that its interests in the collateral are not adequately protected. Specifically, Abbey National contends that the pre-petition receivables in which Abbey National has an interest are being depleted at a rate of Ten Million Dollars ($10,000,000.00) per day, and that the receivables will be entirely consumed in short order. Additionally, Abbey National asserts that the interim order diminished the value of Abbey National's liens. We shall treat this line of argument as one arising under Rule 60(b)(6).

Abbey National's contentions that its interest is not adequately protected can be boiled down to a simple issue. Prior to the filing of Debtor's petition, the outstanding balance on Abbey National's loan to Sales Finance was approximately Two Hundred Twenty–Four Million Eight Hundred Thousand Dollars ($224,800,000.00). This loan to Sales Finance was secured by the receivables transferred to Sales Finance, and this financing arrangement was rated AAA by Standard & Poors. However, the terms of the interim order have altered the nature of Abbey National's liens. Under the terms of the interim order, Abbey National and the other secured lenders have been granted liens on Debtor's postpetition inventory and receivables. Abbey National's loan is thus now secured by inventory and assets which do not have a AAA rating, and Abbey National must now share its liens with Debtor's other secured lenders.

We find Abbey National's arguments to be not well taken. First, we find Abbey National's contention that its collateral is being consumed at a rate of Ten Million Dollars ($10,000,000.00) per day to be disingenuous. It is true that the *pre-petition* receivables are being used by Debtor to purchase and manufacture more steel. However, Debtor's use of the *pre-petition* receivables will inevitably lead to an increase in the value of *post-petition* receivables and inventory, in which Abbey National has a security interest.

This conclusion is amply supported by the affidavit of John T. Delmore, Debtor's Assistant Controller. Mr. Delmore's affidavit indicates that as of January 15, 2001, there was a sufficient equity cushion in both post-petition inventory and receivables to provide adequate protection to all of Debtor's secured lenders. The amount of the respective equity cushions equaled 39% for the receivables lenders and 179% for the inventory lenders. Furthermore, it appears that Debtor's business will continue to generate additional post-petition receivables and inventory sufficient to protect Abbey National's interest in the near

future. Because we find that Abbey National's interest in cash collateral is adequately protected by an equity cushion and by the other terms of the interim order, the Court declines to exercise its discretion to modify the interim order pursuant to Rule 60(b)(6).

## CONCLUSION

For the reasons stated above, the Court concludes that Abbey National's motion seeking to modify the Court's interim order permitting the use of cash collateral on December 29, 2000 is properly characterized as a motion seeking relief from judgment pursuant to FED. R. CIV. P. 60(b). Furthermore, the Court finds that Abbey National has failed to establish that modification of the interim order is warranted. Accordingly, Abbey National's emergency motion is overruled.

An appropriate order shall enter.