Susan **SPEERS**, Plaintiff,

v.

**UNIVERSITY OF AKRON**, Defendant.

No. 5:01–CV–1094.

United States District Court,
N.D. Ohio,
Eastern Division.

March 6, 2002.

David L. Dingwell, Tzangas, Plakas, Mannos & Recupero, Canton, OH, Dennis R. Thompson, Law Office of Dennis R. Thompson, Akron, OH, Lee E. Plakas, Tzangas, Plakas, Mannos & Recupero, Canton, OH, for Susan Speers.

R. Scot Harvey, Brouse McDowell, Akron, OH, Thomas J. Wiencek, Brouse McDowell, Akron, OH, Timothy J. Puin, Brouse McDowell, Akron, OH, for University of Akron.

## ORDER

GWIN, District Judge.

On December 12, 2001, Defendant University of Akron (the "University") filed a motion for summary judgment [Doc. 45]. Plaintiff Susan Speers opposes the motion. Because material issues of fact concerning some of the plaintiff's claims need to be resolved, the Court grants in part and denies in part the University's motion for summary judgment.

### I. Summary of Arguments

Speers is a full, tenured professor in the University's School of Dance, Theatre, and Arts Administration ("SDTAA"). In this lawsuit, Speers claims the University initiated faculty disciplinary procedures that violated her first amendment right to freedom of speech, denied her due process, and constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, Speers says she filed two separate EEOC complaints and that the University was aware of her protected activity of filing the EEOC complaints. She says the University then retaliated against her by denying her a merit raise that was given to all other faculty in her department. She says the University denied the merit increase though her credentials were no different than other professors who received raises.

She further claims the University took unwarranted disciplinary action against her.

Speers also says the University did not afford her adequate process during the disciplinary procedures used to consider an accusation that she made confidential materials available to a student. Finally, she says the University disciplined her for alleged statements at a faculty meeting and that this discipline violated her first amendment right of freedom of speech.

The defendant denies that any of its actions were in retaliation for Speers's EEOC filings. Instead, the University says it denied Speers a merit raise after reference to objective criteria equally applied to all faculty members. The defendant also says Speers received all the process she was entitled to regarding the disciplinary hearing involving the alleged confidential materials. With this argument, the defendants argues that the disciplinary committee considered witness statements submitted by Speers though she had no right to call witnesses at all. Finally, the University says Speers has no first amendment claim because her statements were about a private matter, not a matter of public concern. In addition, the defendant says no first amendment claim exists because Speers did not suffer a harm.

## II. Factual background

On March 16, 1999, Speers made a complaint with the University's Equal Employment Opportunity ("EEO") office because she perceived discrimination within the SDTAA. After receiving her complaint, Nell Russell, head of that office, referred her to the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") if she wished to pursue the matter further. On April 2, 1999, Speers filed a charge of gender discrimination with the OCRC and EEOC, alleging unequal treatment and unequal pay. The discrimination charge was received by the University's EEO office on April 23, 1999, and by the University's general counsel's office on April 26, 1999. Lucinda Lavelli, director of the SDTAA, learned of Speers' EEOC filing in mid-May 1999.

Shortly after filing the sex discrimination charge, Speers attended a meeting during which a student leader expressed complaints about the operation of the SDTAA. On April 7, 1999, Speers and Brian Mormino met with the University's President, Dr. Proenza. Mormino was President of the University's Associated Student Government. Mormino sought the meeting with Proenza to discuss issues relating to the SDTAA and Lavelli. Mormino was critical of the way Lavelli ran the SDTAA.

At the meeting with Proenza, Mormino presented Proenza with a document entitled, "Student Concerns Concerning the University of Akron's School of Dance, Theater and Arts Administration." Parts of the document criticized Lavelli and her administration of the SDTAA. Taking offense with Speer's attendance at the meeting and with the presentation, the defendant says that Speers pushed Mormino and other students to prepare the document. Student President Mormino denies this and says his document was based exclusively on students' input.

Before Mormino presented the document to Proenza, Speers provided Mormino with an informal evaluation report on Lavelli so that he could confirm his conclusions about students' concerns.[1] Speers says that Lavelli's evaluation report was a

---

1. The informal evaluation report was a partially comprised of student evaluations of Lavelli. Speers says that one of the reasons she attended the meeting with Proenza was that some of the student evaluations raised issues of harassment within the SDTAA.

public document available to any person who requested a copy. The defendants say Speers provided Mormino with student and faculty evaluations of Lavelli that the SDTAA considered confidential information.

After learning that Speers had attended a meeting during which she was criticized, Lavelli filed a grievance on April 19, 1999, with the University's Faculty Rights and Responsibilities Committee (the "faculty committee"). Lavelli's grievance alleged that Speers had engaged in unprofessional conduct in violation of the University's Code of Conduct.

Speers complains that the faculty committee denied her due process when, on May 26, 1999, the faculty committee met with Lavelli and Speers to address Lavelli's grievance. Before beginning of that proceeding, the faculty committee told Lavelli and Speers that the hearing was not a court proceeding, and that they would not be allowed to present witnesses or to cross-examine witnesses. The faculty committee told Lavelli and Speers that the only issue for the proceeding was Speers' role in the compilation and distribution of the document Mormino presented to Proenza.

The faculty committee then gave Lavelli and Speers an opportunity to present their statements about Lavelli's grievance. The faculty committee asked follow-up questions of Lavelli and Speers. In addition, the committee questioned Dean Mark Anderson, a professor of English and the interim dean of the College of Fine Applied Arts, and Dr. Paul Daum, a professor in the School of Dance, Theatre, and Arts Administration. Neither Lavelli nor Speers were allowed to present witnesses. Speers says Nancy Stokes, the chairperson of the faculty committee, told her that she would be allowed to have witnesses speak to the faculty committee. The faculty committee did not allow Speers's witnesses to testify but did allow them to submit written statements.

The faculty committee also reviewed Speers's personnel file. Speers complains that the faculty committee's consideration of her file denied her due process because her file contained letters written by Lavelli and other SDTAA faculty that detailed false charges against her. Speers did not learn of these letters until after the faculty committee reviewed her file and made its recommendation to Proenza.

On June 3, 1999, the faculty committee decided the grievance. In its decision, it found that Speers had been involved in giving Mormino materials for use in his submission to Proenza. It said that Speers' involvement in the preparation of Mormino's document failed to accord respect to her faculty colleagues and breached their professional trust. It forwarded its findings to Proenza, recommending that Speers be sanctioned.

On July 27, 1999, Proenza informed Speers that he was placing a letter of reprimand into her file. Prior to Proenza's decision, Speers asked to meet with him personally about the faculty committee's recommendation. Proenza refused but accepted a position letter from Speers's attorney urging him to reject the faculty committee's recommendation.

Parallel to the events just described, a dispute arose over Lavelli's decision not to award Speers a merit pay raise for 1998. The University gives SDTAA full time faculty receive merit pay increases based upon a system whereby a total of one hundred points are assigned amongst all the SDTAA faculty members. Each point represents a percentage point of an available pool of money to be divided and paid as a merit increase to the faculty members' annual academic year compensation. In her position as director, Lavelli had sole discretion in assigning the merit points to

SDTAA faculty. In 1999, ten SDTAA faculty members were eligible for merit raises.

To help make the distribution, Lavelli asked each faculty member to submit a one-page summary of their prior year's respective accomplishments. The three primary categories for awarding merit pay, each given equal weight, are teaching, research/creative, and service. "Teaching" involves reviewing loads, including the number of student preparations, and reviewing student and peer review scores. "Research" includes grant and scholarly activity. "Creative work," in the context of the SDTAA, refers to theater productions and activity at local, national and international levels. "Service" considers service to the University, community and professional organizations.

Merit raises for the start of an academic year consider the prior calendar year's performance. To decide salaries for the scholastic year beginning September 1, 1999, Lavelli considered calendar year 1998 activities. On June 1, 1999, Lavelli denied Speers any raise. She denied Speers any raise though she gave every other SDTAA faculty member a raise. This was the first time in the program's two-year history that a faculty member did not receive a raise.

Lavelli justifies the denial with the argument that Speers primarily taught assigned classes and participated only in local community theater, which she claims was unremarkable compared to other SDTAA faculty's involvement in professional activities and productions that were more prestigious and meaningful.

In 2000, Lavelli gave Speers only two of the possible one hundred points apportioned among the ten faculty members in the department eligible to receive merit increases. Lavelli justified Speers's low merit raise in 2000 for similar reasons that she did not award Speers a merit raise in 1999.

Speers says Lavelli's justifications for her pay raise amounts in 1999 and 2000 are illusory because she earned merit raises for similar activities in the past. Furthermore, Speers says other faculty members with equal or lesser amounts of teaching, performance, and service received merit raises ranging from six to ten points in 1999 and 2000. Speers claims that Lavelli's denial of the merit raises was in retaliation of her protected activity of filing the EEOC charge.

Speers gives evidence that Lavelli's justification is false. For example, in 1998, Speers' taught full loads for both spring and fall semesters including two new courses. In addition to full loads, she also worked on a student thesis and prepared a seminar entitled "Acting for Lawyers." She received excellent student evaluations and acted in or directed a number of outside performances that Lavelli admitted received good reviews. Speers also participated in service work.

Speers contrasts this work with other SDTAA faculty members who received merit raises. She shows that others received ten percent merit increases with an equal number of performances, but with lesser student evaluations and with less service work.

In October 1999, Speers filed a complaint with the faculty committee against Lavelli and four other SDTAA professors. In her complaint, Speers complained that the other faculty members wrongly, and secretly, put damaging information into Speers's faculty file without notice. She said the false accusations violated the University's policy on addressing complaints by faculty members. After receiving Speers's complaint, the faculty committee interviewed the five faculty members

named in Speers's complaint but declined to take further action.

On December 16, 1999, Speers filed another EEOC charge against the University, alleging retaliation because of her earlier gender advocacy.

On January 21, 2000, the SDTAA held its regular faculty meeting. According to the defendant, Speers inexplicably accused Lavelli and Associate Professors James Slowiak and Randy Pope of impairing her career and attempting to cause her termination from the University. Lavelli claims Speers informed all three individuals that she would hold them accountable if her career was affected by any disciplinary or other actions taken against her.

Speers gives a different version of the January 21, 2000, meeting. According to Speers, she calmly questioned whether students could be faulted for not following the SDTAA's complaint policy when SDTAA faculty did not follow the same procedures. She says there was no shouting, dramatic gesturing, or threats. She disputes the defendant's version of events by saying the meeting ended normally and no one appeared upset or distressed. She also says the accusation is even more unwarranted in light of instances where other faculty members would verbally abuse her at faculty meetings.

Nonetheless, in response to Speers' comments, on February 5, 2000, Lavelli sent Speers a memo admonishing her for making accusations and disruptive comments during the January 21 faculty meeting. Professors Slowiak and Pope also submitted memos complaining about Speers's misconduct. Speers responded with her own letter addressing Lavelli's claim of Speers's alleged misconduct. Speers also sent letters to Ted Mallo, the University's general counsel, and to Proenza.

Lavelli had asked Provost Noel Leathers to discipline Speers for her outburst during the January 21 faculty meeting.

On March 3 and 14, 2000, Leathers met with Speers about her concerns. After the two meetings, Leathers recommended suspending Speers for a semester without pay. Having become aware of Leathers' recommendation of her discipline, Speers then submitted a letter to Proenza, asking for a meeting with him and asking him not to discipline her.

Ultimately, Proenza did not meet with Speers, but in a July 28, 2000, letter, he informed her she would not be disciplined. Instead, the letter admonished her behavior and asked her to improve her relationships in the SDTAA. Speers responded to Proenza in a letter addressing all of the issues raised in his letter.

On October 15, 2001, Speers filed her second amended complaint. In Count 1, she says the University of Akron retaliated against her for filing a gender discrimination claim against it with the EEOC. In Count 2, Speers brings suit under 42 U.S.C. § 1983, alleging the defendant violated her rights of free speech, due process, and equal protection by placing false and misleading materials in her personnel file without her knowledge and preventing her from processing grievances against those individuals or from removing the materials.

The Court considers the defendant's motion below.

### III. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect

the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *National Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotations omitted).

### IV. Discussion

#### A. Title VII Retaliation

■ In order to establish a prima facie case of retaliation, the plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) thereafter, the University took an employment action adverse to Speers; and (4) there was a causal connection between Speers's protected activity and the adverse employment action by the University. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000). The plaintiff's burden to establish a prima facie case of retaliation "is not onerous." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997) (quoting *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 377 (6th Cir.1984)). Indeed, it "is a burden easily

met." *Id.* (quoting *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987)).

■ If Speers successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions. *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 658 (6th Cir.2000); *see also Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant fails to satisfy this burden, the plaintiff prevails. If the defendant satisfies this burden, then the presumption of intentional discrimination is negated.

Speers must then show by a preponderance of the evidence that the defendant intentionally discriminated against her. She may do this by showing that the "nondiscriminatory" reasons the University offers is not credible, but is merely a pretext for intentional discrimination. *See Cline,* 206 F.3d at 658; *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that the factfinder's "disbelief of the reasons put forward by the defendant" may, "together with the elements of the prima facie case, suffice to show intentional discrimination").

There is no dispute that Speers's two separate filings of EEOC charges was protected activity. With respect to the second element, Speers has presented evidence that the University had knowledge of the filings before Lavelli denied Speers a merit raise and before the January 19, 2000, SDTAA faculty meeting. Speers also presents evidence stating that Proenza knew of her first EEOC filing in late April or early May 1999. There is sufficient evidence to establish Speers's prima facie case with respect to this element.

■ With regard to the third element of Speers's prima facie case, an adverse em-

ployment action is one that deprives the employee of "'employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997)). An adverse action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir.2000) (internal citation omitted). Instead, the adverse action might be indicated by a "demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices that might be unique to a particular situation." *Id.* at 461–62. Most important is the consideration that Title VII is remedial in nature and should be liberally construed. *See Lynch v. Freeman*, 817 F.2d 380, 388 (6th Cir.1987); *Roberts v. N. Am. Rockwell Corp.*, 650 F.2d 823, 827 (6th Cir.1981).

De minimis employment actions are not materially adverse and therefore not actionable. *See Bowman*, 220 F.3d at 462; *Virostek v. Liberty Township Police Dep't*, No. 99–3809/3893, 2001 WL 814933, at *7 (6th Cir. July 11, 2001) (holding that a one-day suspension without pay that was never served is not an adverse employment action); *see also Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir.2001) (holding that a letter of reprimand is not an adverse employment action unless accompanied by some other action); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir.1999) (holding that letter of concern in personnel file standing alone is not an adverse employment action).

■ On the other hand, reprimands accompanied by some other action satisfy the adverse action element. *See Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir.1998) (holding that involun-

tary transfer and reduction in territory size was adverse action); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir.1998) (holding that numerous written warnings constitute adverse action because the number of warnings influenced retention with the company); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir.1997) (stating that reduction of duties and "papering" of employee's personnel file with negative reports, including two reprimands, enough to constitute adverse action).

■ Speers presents evidence she received unwarranted disciplinary action, a reduction in compensation, and assignment to less favorable teaching assignments because of her protected activity. The defendant disputes Speers's assertions, but taking the evidence in light of the nonmoving party, she provides sufficient evidence to make out this element of her prima facie case.

■■ The fourth element of Speers's prima facie case, causation, asks whether there is evidence that supports an inference that the adverse action would not have been taken if Speers had not filed an EEOC claim. *Nguyen*, 229 F.3d at 563. Temporal proximity between the protected conduct and the adverse action is sufficient to establish the causal connection. *See Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir.2001); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that seven week period between protected conduct and adverse action was sufficient to satisfy causation element). Courts have also held that the causal connection can be established by showing that the aggrieved employee was treated differently from other employees. *See Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

Although the University suggests that the causation element is a rigorous burden to meet, courts have consistently held that the plaintiff need only show that the protected activity and the adverse action have some connection.

Accordingly, at the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.

*Avery Dennison Corp.*, 104 F.3d at 861.

■ Speers presents evidence that Lavelli announced the 1999 merit raises within weeks of learning about her filing the first EEOC charge. Similarly, the disciplinary action stemming from the January 21, 2000, SDTAA faculty meeting was initiated approximately one month after Speers filed her second EEOC charge. The temporal proximity between Speers's EEOC filings, the University's disciplinary action, and Lavelli's decisions concerning her merit raises is sufficient to make out the fourth element of a prima facie case for retaliation.

■ Having shown a prima facie case, the burden shifts to the University to present evidence that it had a "legitimate, nondiscriminatory reason" for its actions. *See Cline*, 206 F.3d at 658. The defendant has met its burden. The University presented evidence that Lavelli's decision not to award Speers a merit raise was made on objective factors. Lavelli gives testimony that, if believed, supports a position that Speers's teaching of assigned classes and participation in local community theater was unremarkable. If believed, a jury could find that other SDTAA faculty were involved in more prestigious and meaningful professional activities and productions.

The University presented evidence that Lavelli filed her April 1999 complaint against Speers before she knew of Speers's first EEOC filing. The University also presents evidence that the disciplinary procedures instigated against Speers for providing Lavelli's evaluations to Mormino and for her comments at the January 21, 2000, SDTAA faculty meeting were based on Speers's inappropriate conduct as a University of Akron professor. The University has sufficiently articulated a legitimate, nondiscriminatory reason for its actions.

Now, for Speers's retaliation claim to survive summary judgment, she must present sufficient evidence to create a material issue of fact as to whether the University's explanation is a mere pretext for its actions. She is able to meet this burden.

■ Speers can "indirectly show pretext by showing that the employer's proffered explanation is unworthy of credence." *See Cline*, 206 F.3d at 667 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). A trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Court reasoned that "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* at 147, 120 S.Ct. 2097; *see also Hines v. Ohio State Univ.*, 3 F.Supp.2d 859, 876 (S.D.Ohio 1998) (holding that the plaintiff's retaliation claim should survive summary judgment because she presented evidence showing that her department failed to recommend her for promotion after she engaged in protected activity even though her department had earlier

recommended her for promotion when she was less qualified).

Speers has presented evidence that she did not receive a merit raise even though other SDTAA faculty members with equal or lesser accomplishments did receive raises. For example, Lavelli gave Cydney Spohn a six point merit raise though her evaluation submission listed her only creative work as "[a]ttended multiple dance concerts and theatre events" and "utilized live musicians for fall dance concert." Her submission listed only one service project, participation in an eating disorder awareness week program. Comparisons with others who received raises further supports Speers claim that she performed as well as others receiving large merit raises. This alone creates a material issue of fact of whether Speers was retaliated against.

Furthermore, the parties have significantly differing account of what went on in the January 21, 2000, SDTAA faculty meeting. At the meeting, the University says Speers had an inappropriate and unprofessional "outburst" threatening several SDTAA faculty members. In contrast, Speers says she calmly and appropriately questioned whether SDTAA students should be held accountable for the school's complaint procedure if faculty members were not. Speers further says that other SDTAA members have yelled at her in the past without any disciplinary action against them.

In light of this conflicting evidence, the Court holds that a material issue of fact exists as to Speers's retaliation claim. The

University's motion for summary judgment on this claim is denied.

**B.  Procedural Due Process**

Next, Speers asserts a claim under 42 U.S.C. § 1983, saying she was denied adequate due process by the faculty committee investigating Lavelli's grievance. The defendant says Speers received the minimal due process she was entitled to as a public employee.

■■■ When a suspension or termination is contemplated, a public employee is entitled to: (1) oral and written notice of the charges against her; (2) an explanation of the employer's evidence; and (3) an opportunity to present his side of the story. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The fact that Speers was merely reprimanded casts doubt if she is even entitled to the process described in *Loudermill.*[2] Nonetheless, Speers makes no argument that she was entitled to any more process than provided by *Loudermill.*

■■■ Even assuming Speers was entitled to the process described in *Loudermill,* she has not created a material issued of fact with regard to this claim. The University afforded her an appropriate opportunity to voice her version of events and respond to any charges against her.

At the hearing held by the faculty committee, Speers was allowed to give a statement as to her version of events. She was also allowed to submit witness statements for the faculty committee's consideration. Speers says that she had been promised

2.  The defendant asserts that under *Loudermill* and its progeny, Speers's reprimand and admonishment is not a deprivation of a property interest giving rise to a right of due process. *Gillard v. Norris,* 857 F.2d 1095, 1097–99 (6th Cir.1988) (reprimand and three-day suspension did not deprive plaintiff of a property interest); *Lowe v. Kansas City, Mo. Bd. of*

*Police Comm'rs,* 841 F.2d 857, 858 (8th Cir. 1988) (placing letter of reprimand in officer's file did not deprive officer of protected property interest) and *Sullivan v. Brown,* 544 F.2d 279, 283 (6th Cir.1976) (transfer and recorded reprimand did not deprive appellant of a "property" interest protected by the Fourteenth Amendment).

that the witnesses would be allowed to testify. Regardless if this promise was made, there is no provision in the University's grievance procedure for witnesses to testify at the hearing. (Def.'s Ex. 32 at 3). In addition, Speers does not demonstrate how she has been deprived of adequate process.

Besides her own statement and the submitted witness statements, Proenza accepted a position letter from her attorney before he decided to reprimand her. Proenza even invited Speers's attorney to submit evidence of the lack of due process. Speers's attorney did not submit any additional evidence. She was given ample opportunity to present her side of events.

Similarly, Speers received adequate process in the disciplinary proceedings following the January 21, 2000, faculty meeting. In response to letters by Lavelli and other SDTAA professors, she wrote and sent two different letters outlining her version of events to Proenza. Speers also met with Provost Leathers on March 3 and 14, 2000, to discuss concerns over the faculty meeting. Speers has not presented any evidence to suggest that she was unaware of the charges against her or was unable to express her version of events.

Speers's other claims of inadequate process also fail. Speers did not file an appeal of Lavelli's decision to deny her a merit award in 1999. The plaintiff says she did not appeal the award because "the appeal goes full circle back to Lavelli to make the final decision." (Pl.'s Resp. at 2). Her assertion is not evidence she was denied inadequate due process.

Finally, the faculty committee's dismissal of Speers's grievance followed the procedures in the University's grievance procedure. (Def.'s Ex. 32 at 1–3). After its initial investigation, including interviewing Speers, the faculty committee recommended dismissing the grievance. Speers was told of this decision and chose not to file an appeal. She has not presented any evidence showing that the faculty committee's following of its own procedures denied her adequate due process.

Because Speers fails to show there is an issue of material fact with regard to her claim of inadequate due process, the Court grants the University's motion for summary judgment on this claim.

### C. First Amendment Retaliation Claim

█ Speers also says that the University's disciplinary actions violated her first amendment right to freedom of speech. To establish this claim, Speers must show that (1) she was engaged in protected activity; (2) the University's adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in protected activity; (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's rights. *See Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir.2000).

█ When the plaintiff is a public employee, she must also demonstrate that her conduct was protected. First, the employee must show that her speech touched on matters of public concern. *See id.* at 737 (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Second, the employee's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Meyers v. City of Cincinnati*, 934 F.2d 726, 729 (6th Cir.1991).

█ To qualify as a matter of public concern, Speers's speech must be fairly characterized as an expression relating to any matter of political, social, or other

concern to the community. *See Rahn v. Drake Ctr.,* 31 F.3d 407, 412 (6th Cir.1994) (citing *Connick,* 461 U.S. at 146–48, 103 S.Ct. 1684). For purposes of Speers's claim, only some portion of her speech must touch upon matters of public concern. *See id.*

■■ The Sixth Circuit has held that "subjects of student discipline and appropriate educational programs to be implemented are undoubtedly matters of concern to the community at large." *Leary,* 228 F.3d at 737. Speers's speech at issue is similar to that in *Leary.*[3] She presents evidence that she joined Mormino at his meeting with Proenza because of student concerns with the SDTAA program and its faculty. Similarly, she spoke at the January 21, 2000, faculty meeting about student and faculty compliance with the SDTAA's complaint policy. These comments touch upon the students' education environment and legitimately concern the academic community at the University.

Next, the Court weighs the competing interests of Speers and the state.

> In order to justify a restriction on speech of public concern by a public employee, plaintiff's speech must impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers. The state bears the burden of showing a legitimate justification for discipline. As in *Rankin [v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ], we look for evidence of the impact of the statement on the [state's] legitimate organizational interests.

*Meyers v. City of Cincinnati,* 934 F.2d 726, 730 (6th Cir.1991) (internal citations

omitted). The Court should consider the content, form, and context of the statement in making this determination. *See Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

Speers's statements at issue were made at a meeting with the University's president to discuss student concerns and at a faculty meeting. In both contexts it would be appropriate to express dissatisfaction with the SDTAA. The defendants say Speers's first amendment claim is based upon her alleged threat in the January 21, 2000, faculty meeting to hold other SDTAA faculty members accountable if her career was jeopardized. Certainly a threat aimed at other members of a department could undermine close working relationships and impart the SDTAA's ability to educate its students.

However, as discussed above, the exact nature of Speers's statements at the faculty meeting are in dispute. Also, defendants claim that Speers said she would hold the three faculty members accountable if her career was affected by disciplinary or other actions taken against her. It is not clear that this is threat impeded the performance of the faculty's duties, or impaired harmony among co-workers to any greater degree than it was already impaired. The defendants do not appear to dispute that Speers commented upon faculty members' lack of compliance with the SDTAA's complaint policy. She says that this is the reason she was disciplined, not because she disrupted a faculty meeting or made a threat. The motivation behind the University's disciplinary action is a question of fact. *See Meyers,* 934 F.2d at 729.

Speers has also presented sufficient evidence that the disciplinary actions taken against her are sufficient to chill a person

---

**3.** In *Leary,* the plaintiffs were vocal opponents of their school's handling of student discipline and the school board's plan to change the current educational model of their school. *Leary,* 228 F.3d at 734–35.

of ordinary firmness from protected activity. The defendant says Speers was not injured by the disciplinary hearing resulting from the January 21, 2000, meeting. Initially, Speers was recommended for a full semester's suspension because of her alleged comments at that faculty meeting. While Speers was ultimately not disciplined at all for anything said in that faculty meeting, the defendant does not account for the earlier discipline she received.

In addition to her actions concerning Lavelli's informal evaluation, Speers presented evidence she spoke about student concerns with the SDTAA program and faculty. Shortly thereafter, the University conducted disciplinary proceedings against her in response to Lavelli's grievance. Once again, the motivation behind the University's disciplinary action is a question of fact. *See id.* Because there are still genuine issues of material fact concerning the reason Speers was disciplined after participating in protected speech, the Court denies the University's motion for summary judgment on this claim.

### V. Conclusion

For the reasons discussed above, the Court partially grants Defendant University of Akron's motion for summary judgment. Plaintiff Speers's claim for inadequate due process is dismissed. The University's motion for summary judgment on Speers's retaliation and first amendment claims is denied.

IT IS SO ORDERED.