**Louis R. VANDER VREKEN, Plaintiff,**

v.

**AMERICAN DAIRY QUEEN CORP. & International Dairy Queen, Inc., Defendants.**

No. 02–73375.

United States District Court, E.D. Michigan, Southern Division.

April 4, 2003.

Michael J. Murray, Kramer & Murray, Mount Clemens, MI, Peter M. Ruggirello, Timothy M. Lessing, Hirt, McArthur, Mount Clemens, MI, for plaintiff.

Jeffrey G. Heuer, Patrice S. Arend, Jaffe, Raitt, Detroit, MI, Jason J. Stover, William L. Killion, Gray, Plant, Minneapolis, MN, for defendants.

### *OPINION AND ORDER*

ROBERTS, District Judge.

## I. INTRODUCTION

This action is before the Court on Defendants' Motion for Preliminary Injunction.

Defendant franchisors terminated Plaintiff franchisee's operating agreements effective August 2, 2002. Plaintiff petitioned this Court for a preliminary injunction to enjoin Defendants from terminating the agreements. On October 25, 2002, the Court denied Plaintiff's request, paving the way for termination. Nonetheless, as of February 8, 2003, Plaintiff's restaurant continued to bear Defendants' trademarks. Additionally, Defendants allege that Plaintiff plans to reopen his restaurant, now closed for the winter, in April 2003. As a result, Defendants brought this Motion asking the Court to enjoin Plaintiff from any further operation of the restaurant using Defendants' trademarks and compelling Plaintiff to immediately remove such marks.

For the reasons stated below the Court GRANTS Defendants' Motion.

## II. BACKGROUND

On May 23, 1955, Harold and Pauline Oak entered into a Franchise Agreement with Pure Seal Dairy, Inc. allowing them to operate a franchise using the Dairy Queen trademarks. *Pl's Exh. B.* Subsequently, on May 1, 1964, the Oaks entered into the Brazier Operating Agreement (Brazier Agreement) with Dairy Queen Enterprises, Inc. which allowed them to sell hamburgers, hot dogs, and French fries (along with other "hot foods"), using the Brazier trademarks. *Pl's Exh. C.* Defendants American Dairy Queen Corp. and/or International Dairy Queen, Inc. are the successors and/or assignees of Pure Seal Dairy, Inc. with respect to the Franchise Agreement and the Brazier Agreement. Plaintiff Vander Vreken accepted assignment of two franchise agreements with American Dairy Queen (ADQ), which gave Vander Vreken the right to operate a Dairy Queen/Brazier restaurant, and to develop additional restaurants within a prescribed territory. *Counterclaim* at ¶¶ 7, 8, 9.

Vander Vreken's franchise agreements imposed certain requirements on him in the operation of his restaurant, including the obligation to comply with the quality standards established by ADQ. Pursuant to Article 12(e) of the Brazier Agreement, Vander Vreken agreed to "repaint the

buildings on said premises at least annually and to maintain said buildings and said entire premises in a high state of repair, cleanliness and sanitation at all times." *See Counterclaim Exh. D.* Likewise, Vander Vreken agreed to operate and maintain the restaurant in compliance with all reasonable health and sanitary standards as from time to time were prescribed by ADQ. *See Counterclaim Exh. D*, at Art. 12(h). The Franchise Agreement is silent on the issue of inspections and, aside from indicating that supplies, mixes, and equipment must be high grade (*Pl's Exh. B*), does not discuss the quality level that must be maintained at which the restaurant.

The Brazier Agreement explicitly provides that Vander Vreken's Brazier franchise rights may be terminated for a material breach of the Brazier Agreement's provisions with respect to inspections and restaurant quality standards. *See id.* The Brazier Agreement also allows for a termination of franchise rights if Vander Vreken fails to cure a default within seven days of receiving written notice thereof. *See id.* at Art. 26. Additionally, in 1998, Defendants issued System Bulletin # 273B (System Bulletin), which they claim modifies the Franchise Agreement. *Pl's Exh. G.* The System Bulletin requires nearly all Dairy Queen franchise owners to maintain store facilities in accordance with ADQ standards and details a zero tolerance policy for substandard conditions. *Id.*

On April 25, 2002, ADQ sent representatives to the store for an unannounced inspection. The representative gave the restaurant a failing score. Plaintiff characterizes the evaluation as subjective. On July 2, 2002, ADQ again sent representatives to the restaurant to conduct another unannounced inspection. Again, ADQ's representatives gave Vander Vreken a failing score. On July 10, 2002, ADQ notified Vander Vreken that his franchise rights would terminate on August 2, 2002 due to his failing scores on the inspections. Defendants did terminate the agreement for Plaintiff's failure to comply with the quality and service standards promulgated by ADQ.

Plaintiff claims that ADQ's actions are an effort to eliminate his and older stores like his (the so-called 29 Cent Stores) which purchase ice cream mix from ADQ at 29 cents per gallon. As a result of the 29 Cent Stores' ability to purchase ice cream mix at a lower rate than the newer franchises, Plaintiff claims that ADQ has a long standing policy of antagonizing such stores in an effort to remove them from the franchise system. Defendants', however, point to provisions of the Brazier Agreement which note:

> Company or its authorized representatives shall have the right from time to time to enter the said store of Licensee at all reasonable times during the business day for the purpose of making periodic inspections to ascertain if all of the provisions of the Agreement are observed by Licensee and to inspect Licensee's said store, lands, and equipment, and to test, sample and inspect his supplies, ingredients, and products of all kinds, the preparation and formulation thereof and the conditions of sanitation and cleanliness in the production, handling, and serving thereof.

*See Counterclaim, Exh. D* at Article 15, (Brazier Operating Agreement)

Plaintiff argues that while the Franchise Agreement does allow ADQ to perform inspections on the premises, it does not permit ADQ to conduct such inspections in an arbitrary and capricious manner. Furthermore, Plaintiff points to a July 18, 2002 inspection of the restaurant by the Macomb County Health Department, which concluded that Plaintiff's restaurant was fit for operation. *See Pl's Resp. Exhibit E.*

Because Plaintiff plans to reopen the store following its winter closing still bearing Defendants' trademarks, Defendants seek a Preliminary Injunction.

## III. ANALYSIS

Procedurally, Plaintiff argues that Defendants' Motion should be stricken as untimely because the Court's Scheduling Order indicates that no dispositive motions shall be filed prior to July 8, 2003. *Pl's Exh. A.* However, the Court points to its October 25, 2002 decision dissolving the state court-ordered preliminary injunction which allowed Plaintiff to continue operating his store using Defendants' marks. In dissolving the preliminary injunction, the Court found that the stringent standard for entry of injunctive relief had not been met. Defendants then had the right to terminate Plaintiff's agreements, although Plaintiff's suit for damages and claim that Defendants breached the agreements, would continue.

Based on this prior holding, Plaintiff has no right to operate his restaurant using the Defendants' marks and Defendants should not be required to come before the Court to prohibit Plaintiff from doing so. Because Defendants indicate that they have representations from Plaintiff's counsel that Plaintiff plans to reopen the store despite not having a valid franchise agreement, and because Plaintiff's restaurant still bears the Defendants' marks, the Court will consider the motion.

 In the Sixth Circuit, a party seeking an injunction must show the existence of four factors: 1) a strong likelihood of success on the merits, 2) irreparable harm to the movant should the injunction be denied, 3) the absence of substantial injury to others should the injunction issue, and that 4) issuance of the injunction would serve the public interest. *See Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir.2000). "These considerations are merely factors to be balanced, 'not prerequisites that must be met.'" *Teamsters Local Union 299 v. U.S. Truck Co. Holdings,* 87 F.Supp.2d 726, 733 n. 2 (E.D.Mich. 2000) *(quoting Mascio v. Public Employees Ret. Sys. of Ohio,* 160 F.3d 310 (6th Cir.1998)). Because a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power," it should be issued only in those limited circumstances that demand it. *Leary,* 228 F.3d at 739. The Court will consider each factor in turn.

### A. Success on the Merits

 With regard to the first element, the Court finds as it did in its October 25, 2002 opinion— that neither party establishes a strong likelihood of success on the merits. No new evidence has been presented that which alters that conclusion.

### B. Irreparable Harm to the Movant

Second, the Court must consider whether there will be irreparable harm to the movant if no injunction issues. A finding that the movant will suffer irreparable harm is the single most important factor to be considered by the court. *See Metro-Banc v. Federal Home Loan Bank Bd.,* 666 F.Supp. 981, 984 (E.D.Mich.1987), *citing Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Accordingly, "the absence of irreparable injury must end this court's inquiry." *Id.* Defendants argue that ADQ will suffer irreparable harm to its customer goodwill and trademarks should Plaintiff be permitted to continue operations. "If a trademark owner allows licensees to depart from its quality or other standards, the public will be misled, and the trademark will cease to have utility as an informational device." *Little Caesar,* 796 F.Supp. at 1035, *quoting Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431,

434 (7th Cir.1989). Moreover, "an inability to preserve the goodwill already accumulated at the location would result in irreparable harm to plaintiff corporation." *Dunkin' Donuts Inc. v. Taseski,* 47 F.Supp.2d 867, 878 (E.D.Mich., 1999), *citing Jiffy Lube Int'l Inc. v. Weiss Bros., Inc.,* 834 F.Supp. 683, 691 (D.N.J.1993) (holding that a franchiser has a valid interest in protecting the customer good will it has developed). The Court finds that Defendants will suffer irreparable harm to its reputation and goodwill each day that Plaintiff represents its restaurant to be an ADQ one, and/or so long as Plaintiff operates the restaurant while not in compliance with ADQ's quality standards.

## C. Degree of Harm to the Adverse Party

The third element the Court must consider is the degree of harm suffered by the adverse party should the injunction issue. Plaintiff's harm is not irreparable. Instead, it is similar to what the court found in *Little Caesar Enterprises, Inc. v. R–J–L Foods, Inc.,* to be "clearly compensable by money damages." 796 F.Supp. 1026, 1035 (E.D.Mich., 1992). The Court finds that if Vander Vreken prevails at trial, any losses suffered by Plaintiff before trial can be fully compensated through the award of money damages. In balancing the injuries to both parties, it is clear that injury to Plaintiff is compensable where injury to Defendant is not.

## D. The Public Interest

Finally, the court must consider how issuance of an injunction will serve the public interest. Defendants argue, and this Court agrees, that the public interest in the quality of food it consumes cannot be served by allowing a franchisee to operate a restaurant that has failed its franchisor's inspections. While Plaintiff points to the Macomb County Health Department's approval of his facility for proof of the restaurant's level of cleanliness, if the Brazier Agreement applies here, Plaintiff has acquiesced to a much higher standard and has failed to meet it.

Furthermore, "the public interest is especially served by issuing a preliminary injunction against a former franchisee as the licensee's status increases the probability of consumer confusion." *See Little Caesar Enterprises, Inc. v. R–J–L Foods, Inc.,* 796 F.Supp. 1026, 1036. If customers visit Plaintiff's restaurant observe the Defendants' trademarks throughout the premises, and are served the same trademarked products that have been at the location for nearly forty years, these customers cannot reasonably be expected to know that Plaintiff is no longer a licensed franchisee. The Court finds that the public interest is served by preventing Plaintiff from using Defendant's trademarks which could mislead the public.

## E. Summary

"Where the three factors other than the likelihood of success all strongly favor issuing the injunction, a district court is within its discretion in issuing [a] preliminary injunction if the merits present a sufficiently serious question to justify further investigation." *Little Caesar Enterprises,* 796 F.Supp. at 1030. The Court finds that the present case presents such a situation. As such, the Court grants Defendants' Motion for Preliminary Injunction. Accordingly,

**IT IS HEREBY ORDERED** that:

1. Plaintiff Louis R. Vander Vreken ("Vander Vreken") cease, within ten days of the date of this Order:

(a) using, advertising or displaying the DAIRY QUEEN@ and BRAZIER@ names or any of defendants' trademarks or service marks in any manner, including, but not limited to, use on signs, posters, point of sale materi-

als, Internet websites, telephone directories, magazines, newspapers, flyers, sales promotion materials, menu boards, menu board strips, paper goods, product packaging, cups, lids, utensils, manuals, uniforms or any other items on the building or premises of Vander Vreken's restaurant, at any other location or in any other medium without a license from defendants:

(b) using or displaying any of defendants' copyrighted materials in any way on the building or premises of their store, or at any other location without permission from defendants;

(c) selling any goods or providing services at the restaurant located at 35610 Jefferson Avenue, Mount Clemens, Michigan, until Vander Vreken has removed all signs, posters, point-or-sale materials, menu boards, menu board strips, paper goods, product packages, cups, lids, utensils, manuals, or any other item bearing the DAIRY QUEEN@ and BRAZIER@ Marks from the store and surrounding premises.

2. It is further ordered that Vander Vreken file with the Court and serve on defendants' counsel a report in writing and under oath, within fifteen days from the date of this order, setting forth in detail the manner and form in which Vander Vreken has complied with the requested preliminary injunction. It is further ordered that Vander Vreken shall reimburse defendants for the costs and attorneys' fees defendants have incurred in connection with this motion. Defendants shall submit a Motion for Costs and Attorney Fees, supported by adequate documentation, within fifteen days from the date of this Order.

3. Pursuant to Federal Rule of Civil Procedure 65(c), this Court has considered the amount of security that must be provided by defendants. Having reviewed all of the files and proceedings herein, this Court determines that Defendants need not post security, for the reasons set forth at the hearing held on Friday, April 4, 2003.

**IT IS SO ORDERED.**